MANSMANN,

dissenting.

I respectfully dissent because I would hold that the military did, in fact and in law, have continuing jurisdiction over Murphy to subject him to recall to active duty and subsequent court-martial. Consistent with Supreme Court jurisprudence, I find that the circumstances surrounding Murphy’s discharge from the regular component of the Marine Corps and his acceptance of a commission in the Marine Corps Reserve did not constitute a true break in service. Assuming arguendo that such a break did occur, however, I would hold that Congress intended, with the enactment of the 1986 amendments to 10 U.S.C. § 802 and 10 U.S.C. § 803, more specifically 10 U.S.C. § 802(d) and 10 U.S.C. § 803(d), to integrate the reserve components into the total-force policy of the military by subjecting members of the reserve components to the same disciplinary standards as their regular component counterparts.
I.
Irrespective of whether Murphy did not have further military obligation to the Marine Corps as a matter of law, the fact remains that, as the majority opinion states, he requested and accepted, simultaneously with his discharge, a commission as a reserve officer and transferred to the Marine Corps Reserve. Therefore, consistent with United States ex rel. Hirshberg v. Cooke, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949), no actual physical break in service occurred which would have created a lapse in status during which Murphy was not subject to military jurisdiction. This is consistent with the Supreme Court’s holding in Hirshberg that the Navy did not have court-martial jurisdiction over a member of its regular component who was honorably discharged and who re-enlisted the next day for offenses allegedly committed during an initial term of enlistment. The fact that Murphy did not join a reserve unit immediately is not compelling in that he accepted the commission as a reserve officer simultaneously with his discharge from the regular component. Further, although Plaintiff received a DD-214 (Honorable Discharge Certificate), the Uniform Code of Military Justice delineates exceptions to the rule that “delivery of the discharge certificate terminates status.” These exceptions include re-enlistment discharges, Article 3(a) offenses[1], and fraudu *353 lent discharge.[2] I would first apply the exception for re-enlistment discharges, which refers to the practice of discharging a member of the military at the termination of the period of enlistment or earlier, and then immediately re-enlisting the member.
With respect to the second exception to the Code rule that “delivery of the discharge certificate terminates status” — Article 8(a) offenses, 10 U.S.C. § 803 permits military prosecution if the member of the military is not on active duty status at the time of the court-martial but the alleged offense which occurred prior to the discharge is not actionable in any civilian court and the punishment for the action is incarceration for a period of five or more years. Of the charges raised against Murphy, fraudulent separation and false official statements individually carried a punishment of five or more years confinement. In addition,' fraudulent separation is not a charge for which a person may be tried “in the courts of the United States or of a State, a Territory, or the District of Columbia ...” pursuant to 10 U.S.C. § 803(a).[3] As a result, I would hold that the jurisdictional requirements of § 803(a) were met and Murphy was indeed a member of the military subject to the Uniform Code of Military Justice both at the time the alleged offenses were committed and at the time of the court-martial.
Thus, Murphy was eligible to be ordered to active duty status because he did not have a break in service and further because he falls squarely within exceptions to the delivery of the discharge certificate rule.
II,
Assuming arguendo that Murphy had a break in service between his active duty/regular component status and Ms reserve officer status, I would still hold that he could be ordered to active duty for trial by court-martial. Section 802(d)(1) specifically provides that:
(d)(1) A member of a reserve component who is not on active duty and who is made the subject of proceedings under section 815 (article 15) or section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of—
(A) investigation under section 832 of tMs title (article 32);
(B) trial by court-martial; or
(C) nonjudicial pumshment under section 815 of tMs title (article 15).
(2) A member of a reserve component may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was—
(A) on active duty; or
(B) on inactive-duty training, but in the case of members of the Army National Guard of the UMted States or the Air National Guard of the UMted States oMy when in Federal service.
The plain language of the statute sets forth clearly that Murphy, as “a member of a reserve component” may be ordered to active duty if he committed an offense “while [he] was on active duty.”
I cannot find any support in the statute for the majority’s holding that the term “active *354 duty” should apply only to periods of active duty while Murphy was a member of the reserve component and not the regular component; the language of the statute does not limit or qualify “active duty” in any manner. Indeed, the legislative history of § 802(d) as well as § 803(d) indicates that Congress intended to promote a full amalgamation of the reserve component with the regular component by expanding court-martial jurisdiction for the reserve component. It was the intent of Congress, with the enactment of the 1986 amendments to § 802 and § 803, to update court-martial jurisdiction as it applies to members of the reserve component; (“The provisions of the UCMJ addressing jurisdiction over reservists were drafted more than 36 years ago. At that time, the reserve was viewed as a separate force.” H. Rep. 99-718, 99th Cong., 2d Sess. p. 226.) Therefore, it would be inconsistent with the total-force concept to hold that a lapse in court-martial jurisdiction occurs each time a member of the military transfers between components.
Most importantly, the House Report states that “[t]he proposed amendments would ... permit the call or order to active duty of a member of a reserve component for the purpose of disciplinary action; and correct the lapse of jurisdiction over an offense committed by a reservist during a period of duty that ends before the offense is discovered.” Id. at 226. This was in direct response to the decision of the Court of Military Justice in United States v. Caputo, 18 M.J. 259 (C.M.A.1984), in which jurisdiction over a reservist was relinquished as he was alleged to have committed offenses against the UCMJ during one period of active duty but the offenses were not discovered or acted upon by the military until a subsequent period of active duty. The Caputo example of “fortuitous circumstances” — and Murphy’s situation — are the types of instances which Congress sought to address and remedy with the 1986 amendments to the statutes.
We recognize the comment in the House Report that “[w]ith respect to the proposed amendment of Article 3, the committee intends not to disturb the jurisprudence of [Hirshberg ].” H. Rep. 99-718, 99th Cong., 2d Sess. p. 227. While the Supreme Court in Hirshberg held that a break in service terminates court-martial jurisdiction over a member of the military, our task is to consider the statutes and amendments of § 802 and § 803 applicable to Murphy to analyze properly his situation as a present day member of the reserve component. In finding that Murphy was a member of the military subject to the UCMJ both at the time the alleged offenses were committed and at the time he was called to court-martial, we are not disturbing the jurisprudence of Hirshberg because Hirshberg was not subject to Article 3(a) offenses. As the 1986 amendment § 803(d) states:
A member of the reserve component who is subject to this chapter is not, by virtue of the termination of a period of active duty or inactive-duty training, relieved from amenability to the jurisdiction of this chapter for an offense against this chapter committed during such period of active duty or inactive-duty training.
10 U.S.C. § 808(d)
Accordingly, I would affirm the decision of the district court.

. We note that the government does not raise the issue of continuing jurisdiction under § 803(a) in its brief as all of the charges to which Murphy pled guilty pursuant to the plea agreement individually carried a period of confinement of less than five years. However, the language of § 803(a) specifically addresses those actions with which a "... person [is] charged with having committed ...." and not the charges for which a person is ultimately convicted.

. Fraudulent discharge involves the member of the military who obtained the discharge on fraudulent pretenses. It does not appear that the government is relying on this exception in this appeal.
As noted in the majority opinion, the record is not clear as to whether the charges as originally raised against Murphy contained the charge of Fraudulent Discharge. The General Court Martial-Order dated November 5, 1990 which listed the disposition of all of the charges as ultimately raised against Murphy does contain a charge for alleged false representations and concealment of facts material to separation from the Funded Legal Education Program and subsequent misrepresentations to a superior which procured a separation from the regular component of the United States Marine Corps.
Pursuant to a plea agreement, Murphy pled guilty to two of the five charges; the remaining three charges, including the charge of fraudulent discharge, were withdrawn by the Government.

. The discussion of the charge of fraudulent discharge is limited herein as it applies to the Article 3(a) offenses exception and not as the charge may apply to a basis of jurisdiction under 10 U.S.C. § 803(b).